UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE COMPLAINT | * | CIVIL ACTION |
| OF MAGNOLIA FLEET, LLC AND | | |
| RIVER TUG LLC, AS OWNER AND | * | NO. 22-504 |
| OPERATOR OF THE M/V LOUISIANA | | |
| FOR EXONERATION FROM AND/OR | * | SECTION "L" (2) |
| LIMITATION OF LIABILITY | | |

**ORDER AND REASONS**

Before me is non-party Harbor Towing and Fleeting, LLC's Motion to Quash Subpoena Duces Tecum issued by claimant Rocky Hickman. ECF No. 218. Claimant Hickman timely filed an Opposition Memorandum. ECF No. 222. No party requested oral argument in accordance with Local Rule 78.1, and the Court agrees that oral argument is unnecessary.

Having considered the record, the submissions and arguments of counsel, and the applicable law, the Motion to Quash is GRANTED for the reasons stated herein.

I.  **BACKGROUND**

Claimant Rocky Hickman was employed by Lebeouf Bros. Towing as a captain assigned to the M/V NANCY SONIER during Hurricane Ida on August 29, 2021. He alleges that the M/V NANCY SONIER was docked at Magnolia Fleet's facility on the Mississippi River and Magnolia Fleet allowed various tugs to tie off to fleeted barges and tiers of barges broke free during Hurricane Ida and damaged the M/V NANCY SONIER, endangering the vessel, the crew and himself. ECF No. 69 ¶ 5, at 7. Plaintiff alleges that he sustained severe injuries to his mental health and has since been diagnosed with post-traumatic stress syndrome, depression and anxiety. *Id*. (second) ¶ 5. Magnolia Fleet filed a counterclaim alleging that Hickman failed to control the barges and assist in retrieving the barges, abandoned ship, and caused the M/V NANCY SONIER and its crew to uncouple and break out barges from tier 2. ECF No. 76 ¶¶ 8-9, at 14-15.

During discovery, Claimant issued a subpoena duces tecum to non-party Harbor Towing and Fleeting, Inc. (and ten other entities), none of which has any role or involvement in the underlying proceeding.  ECF No. 218-1 at 1-2.  The subpoena duces tecum demands production of several categories of documents:

1. Harbor Towing and Fleeting, LLC's, safety policies and procedures regarding hurricane/weather-related events, preparedness, and reporting of same in effect at the time of Hurricane Ida and include any and all amendments, updates or pending updates through present.
2. Harbor Towing and Fleeting, LLC's, post-incident investigation following the impact of Hurricane Ida on August 29, 2021 and the subsequent breakaway ("the Incident") involved in the above captioned proceeding.
3. Harbor Towing and Fleeting, LLC's, TSMS pertaining to hurricane preparation for its fleet locations.
4. Any and all emails of Harbor Towing and Fleeting, LLC, internal of the company and external to/and or from customers, pertaining to its preparation/planning/actions for Hurricane Ida and operational decisions concerning its fleeting operations relating to Hurricane Ida.
5. The Barge Fleeting Standard of Care and Streamline Inspection Program Guide Book from Greater New Orleans Barge Fleeting Association.[1]

In its Motion to Quash, Harbor argues that the subpoena seeks confidential and proprietary information that is not publicly available and in which it has a protectable interest (items 1, 3, 4), it has no documents responsive to item 2, and that it has a copy of the guidebook in item 5, as does all members of the Greater New Orleans Association Barge Fleeting Association, but it is restricted from sharing that book with non-members.  ECF No. 218-1 at 3-4.  Harbor further argues that Claimant is on a fishing expedition, seeking information from Petitioner's competitors to compare their procedures to Petitioner's, but such comparison is probative of nothing because the test of whether Petitioner's plan is reasonable must be based on comparison to the U.S. Coast Guard regulations, not what someone else may or may not do.  *Id*. at 4.  Further, it is unduly burdensome to require production of this information from a non-party.  *Id*. at 5.

---

[1] ECF No. 218-2 at 3-4.

In Opposition, Claimant concedes that items 2 and 5 are not needed at this point, but he seeks 1, 3 and 4. ECF No. 222 at 3. He argues that the subpoena seeks information that is either relevant or likely to lead to the discovery of admissible evidence. *Id.* Further, he states that four or five other fleeters have provided the requested information, and movant can submit the documents for *in camera* inspection for the court to assess the proprietary risk involved. *Id.* Claimant addresses work product, although movant has not argued work product in response to the subpoena. *Id.* at 4-5.

## II.     APPLICABLE LAW AND ANALYSIS

### A.  The Scope of Discovery

Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable."  FED. R. CIV. P. 26(b)(1).  Rule 26(b)(2)(C) directs the Court to limit the frequency or extent of discovery otherwise allowed, if it determines: (1) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery had ample opportunity to obtain the information; or (3) the proposed discovery is outside the scope of Rule 26(b)(1).

The relevancy evaluation necessarily begins with an examination of Plaintiff's claims.[2] The threshold for relevance at the discovery stage is lower than the threshold for relevance of

---

[2] *Volvo Trucks N. Am., Inc. v. Crescent Ford Truck Sales, Inc.*, No. 02-3398, 2006 WL 378523, at *4 (E.D. La. Feb. 17, 2006) (Zainey, J.).

3

admissibility of evidence at the trial stage.[3]  This broader scope is necessary given the nature of litigation, where determinations of relevance for discovery purposes are made well in advance of trial.  Facts that are not considered in determining the ultimate issues may be eliminated in due course of the proceeding.[4]  At the discovery stage, relevance includes "[a]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."[5]  Discovery should be allowed unless the party opposing discovery establishes that the information sought "can have no possible bearing on the claim or defense of the party seeking discovery."[6]  If relevance is in doubt, the court should be permissive in allowing discovery.[7]

### B. Discovery from Non-Parties Through Subpoenas

Discovery may be obtained from non-parties pursuant to Rule 45 of the Federal Rules of Civil Procedure.  Although governed in the first instance by Rule 45, non-party subpoenas are also subject to the parameters of Rule 26.[8]  "Both Rules 45 and 26 authorize the court to modify a subpoena duces tecum when its scope exceeds the boundaries of permissible discovery or otherwise violates the parameters of Rule 45."[9]  Rule 45 also provides additional protections to non-parties.  Specifically, the party issuing a subpoena to a non-party "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  FED. R. CIV. P. 45(d)(1).

---

[3] *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 2011) (citations omitted).
[4] *Id.* n.5 (citation and quotation omitted).
[5] *Id*. (citations omitted).
[6] *Dotson v. Edmonson*, No. 16-15371, 2017 WL 11535244, at *2 (E.D. La. Nov. 21, 2017) (citing *Merrill v. Waffle House, Inc*., 227 F.R.D. 467, 470 (N.D. Tex. 2005)).
[7] *E.E.O.C. v. Simply Storage Mgmt., L.L.C*., 270 F.R.D. 430, 433 (S.D. Ind. 2010) (quoting *Truswal Sys. Corp. v. Hydro–Air Eng'g, Inc*., 813 F.2d 1207, 1212 (Fed. Cir. 1987) (internal quotations omitted)).
[8] *In re Application of Time, Inc*., No. 99-2916, 1999 WL 804090, at *7 (E.D. La. Oct. 6, 1999), *aff'd,* 209 F.3d 719 (5th Cir. 2000).
[9] *Hahn v. Hunt*, No. 15-2867, 2016 WL 1587405, at *2 (E.D. La. Apr. 20, 2016) (citing FED. R. CIV. P. 45(d)(3); 26(c)(1)(D)), *aff'd*, 2016 WL 6518863 (E.D. La. Nov. 2, 2016).

The person filing the motion to quash has the burden to demonstrate that compliance would impose undue burden or expense.[10]  "Whether a burdensome subpoena is reasonable must be determined according to the facts of the case, such as the party's need for the documents and the nature and importance of the litigation."[11]  To determine whether the subpoena presents an undue burden, the Fifth Circuit considers the following factors: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed.[12]  "Further, if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party."[13]

C. **Analysis**

Claimant "wishes to discover the facts surrounding the policies and procedures regarding hurricane/weather-related events and preparedness and reporting of same in effect during Hurricane Ida."  ECF No. 222 at 3.  Movant objects on various bases, including relevance and burden.[14]  Although Claimant contends that these documents are "reasonably calculated to lead to the discovery of admissible evidence," Congress jettisoned that language several years ago:  "The

---

[10] *See Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004); *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (finding party resisting discovery must show why each discovery request is not relevant or otherwise objectionable).
[11] *Wiwa*, 392 F.3d at 818 (internal quotation marks and footnote omitted).
[12] *Id.* (internal citations omitted).
[13] *Id.* (citation omitted).
[14] Movant also objects on the basis of proprietary information (with regard to its policies and customer lists/identities) and privilege.  Movant fails to identify the basis of the alleged "privilege," but regardless, emails between a business and its customers are not subject to any governing privilege.  While such communications may constitute confidential or proprietary business information, they are not privileged.  *See United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997) (citation omitted) (stating that a party invoking the attorney-client privilege bears the burden of demonstrating its applicability and must show:  (1) that he made a confidential communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding).  With regard to proprietary business information objection, Claimant does not dispute movant's assertion that its policies or customer communications constitute confidential or proprietary business information.

2015 amendments to Rule 26 deleted from the definition of relevance information that appears 'reasonably calculated to lead to the discovery of admissible evidence' because '[t]he phrase has been used by some, incorrectly, to define the scope of discovery' and 'has continued to create problems' given its ability to 'swallow any other limitation on the scope of discovery.'"[15]

The current parameters for permissible discovery, as established by Rule 26(b)(1), extend to that which is non-privileged, relevant to claims and defenses in the case and within Rule 26's proportionality limits.  Claimant does not address whatsoever the proportionality limitation of Rule 26.  And while Claimant asserts in a conclusory manner that the evidence sought is relevant, he fails to identify how another company's safety policies, post-hurricane investigations, or emails with its own customers can have any possible relevance to any claim or defense in this matter involving Magnolia Fleet.  Presumably (because Claimant does not expressly argue), he seeks information from other fleet owners to establish industry custom or practice.  While industry custom or practice may have some marginal relevance,[16] Claimant cannot establish an industry custom or practice simply by introducing procedures of a few industry participants.  Rather, evidence regarding industry custom or practice would require an expert with sufficient knowledge, training and skill to opine on the industry custom or standards.[17]

Further, whether Magnolia Fleet's hurricane preparedness plans comply with federal regulations must be determined by a comparison of its plan to the regulatory requirements, not by comparison of its plan to competitors' plans.  Introducing policies and procedures or post-

---

[15] FED. R. CIV. P. 26, advisory committee's note to 2015 amendment.
[16] Evidence of industry custom is required in limited situations.  *E.g., Echo Powerline, LLC v. OSHA*, 968 F.3d 471 (5th Cir. 2020); *Deloach Marine Servs., LLC v. Marquette Trans. Co., LLC,* No. 17-2790, 2019 WL 1451150 (E.D. La. Apr. 2, 2019) (discussing competing expert testimony on claim of negligence for failure to comply with industry customs).  Even conformity with industry custom is not controlling and must not be taken as the legal standard of care and negligence.  *See, e.g., Gunn v. Mid-South Health Dev.*, 211 F.3d 126 (5th Cir. 2000) (unpublished).
[17] *See, e.g., Jussila v. M/T LOUISIANA BRIMSTONE*, 691 F.2d 217 (5th Cir. 1982) (discussing marine experts' disputed testimony regarding industry customs regarding safety paint).

hurricane investigation of competitors serves no purpose and would only confuse the issue. As such, competitors' policies and plans do not bear on any claim or defense in this case, as sought in items 1 and 2. Even more tangential is competitors' email communications with their own customers, as sought in item 4. As such, the items in dispute (1, 2 and 4) are not within the bounds of permissible discovery under Rule 26. Further, considering the, at most, marginal potential relevance of competitors' information and Claimant's obligation to avoid imposing unnecessary burden and expense on non-parties, the motion to quash must be granted.

### III.   CONCLUSION

Claimant has not established how the policies or procedures of a non-party/competitor of Magnolia Fleet, with no involvement whatsoever in the incident at issue, could have any possible relevance to any claim or defense. To the extent Claimant seeks such information in an effort to establish industry practice, merely introducing examples of what some other competitors do falls short of establishing industry custom or practice. Further, in light of the limited, if any, relevance of the information sought to any claim or defense and considering the proportionality standard with particular consideration of movant's status as a non-party, the subpoena duces tecum must be quashed.

Accordingly,

IT IS ORDERED that the Motion to Quash (ECF No. 218) is GRANTED.

New Orleans, Louisiana, this __15th__ day of March, 2023.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

7