**UNITED STATES DISTRICT COURT EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF MAGNOLIA FLEET, LLC AND RIVER TUG LLC AS OWNER AND OPERATOR OF THE M/V LOUISIANA FOR EXONERATION FROM AND/OR LIMITATION OF LIABILITY OPERATOR OF THE M/V LOUISIANA | CIVIL ACTION NO: 2:22-cv-00504<br><br>DISTRICT JUDGE:<br>HON. ELDON E. FALLON<br><br>MAGISTRATE JUDGE:<br>HON. DONNA PHILLIPS CURRAULT<br><br>Admiralty – Rule 9(h) |

**ORDER AND REASONS**

The Court has before it R. Doc. 406, a motion for summary judgment as to exoneration from liability by Magnolia Fleet, LLC and River Tug LLC (hereinafter "Petitioners") and R. Doc. 412, a motion for partial summary judgment on behalf of claimants Florida Marine, LLC, U.S. Specialty Insurance Company, Rocky Hickman, Turn Services, LLC, Canal Barge Company, Inc., Enterprise Marine Services, LLC, Maintenance Dredging, Inc., Maintenance Dredging I, LLC, GCM H/M Underwriters Pool 2020 Companies and Interests, Beazley Insurance Company Incorporated and Markel American Insurance Company, NGL Marine, LLC, Stratford Insurance Company and Navigators Insurance Company, and Valero Refining-New Orleans, LLC (hereinafter "Movants"). Petitioners' motion urges the Court to grant summary judgment as to their entitlement to exoneration from liability because Hurricane Ida was an Act of God and they undertook all reasonable precautions. R. Doc. 406-1 at 1. Movants' motion urges the Court to enter partial summary judgment that Petitioners are not legally entitled to the Act of God defense and/or to limitation of liability. R. Doc. 412. Having considered the briefing and the applicable law, the Court rules as follows.

1

I.  **BACKGROUND**

This suit arises out of alleged property damage caused by vessels which became unmoored during Hurricane Ida on or around August 29, 2021. R. Doc. 1 at 3. Petitioners are a fleeting facility located at or around the Mile 122 marker on the Lower Mississippi River (the "Mile 122 Fleet") and are the owner and operator of the M/V LOUISIANA, the fleet boat for the Mile 122 Fleet. *Id.* at 2-3. Petitioners filed for Exoneration From or Limitation of Liability on February 25, 2022, alleging that neither they nor the M/V LOUISIANA are liable for any damages or injuries resulting from the uncouplings that occurred at their fleet as well as others along the River in the aftermath of Hurricane Ida. *Id.* at 3-4. Alternatively, Petitioners argue that in the event they are found to be liable for any of the claims asserted against them, they are entitled to limit their liability pursuant to 46 U.S.C. §§ 30501-30512, the Limitation of Liability Act, and/or that Hurricane Ida constituted an Act of God. *Id.* at 4-5.

Eight claimants were known to the Petitioners when they filed their complaint[1] and several additional claimants have either asserted claims against Petitioners since and/or filed cross-, counter-, and/or third-party claims against various other parties in this litigation. Claimants Maintenance Dredging Refining New Orleans, LLC (hereinafter, along with its related company Maintenance Dredging I, LLC, "MDI"),[2] Valero Refining New Orleans, LLC ("VRNO"), Entergy Louisiana, LLC ("Entergy"), Canal Barge Company, Inc. ("CBC"), Florida Marine, LLC ("Florida Marine"), Enterprise Marine Services, LLC ("Enterprise"), and Kirby Inland Marine, LLC ("Kirby"), filed timely answers to the complaint. R. Doc. 4; R. Doc. 6; R. Doc. 7; R. Doc. 8; R. Doc. 9; R. Doc. 10; R. Doc. 11. On July 18, 2022, Captain Rocky

---

1. These eight claimants listed in the complaint are Florida Marine, LLC, Maintenance Dredging, Inc., Canal Barge Company, Inc., Enterprise Marine Services LLC, Valero, Kirby Inland Marine, LP, LeBeouf Brothers Towing, LLC, and Entergy Corporation. R. Doc. 1 at 5-6.
2 MDI's underwriters are GCM H/M Underwriters Pool 2020 Companies and Interests, Beazley Insurance Company Incorporated, and Markel American Insurance Company, all of whom joined MDI in filing an answer to the complaint (collectively "MDI Interests"). R. Doc. 6.

Hickman, employed by LeBeouf Brothers Towing ("LBT") as Captain of the M/V NANCY SONIER, filed an answer to Petitioners' complaint and asserted a third-party complaint against LBT. R. Doc. 69. LBT filed its answer to Hickman's third-party complaint on August 10, 2022. R. Doc. 79. On August 12, 2022, Petitioners responded to VRNO's answer and claim by asserting a third-party complaint against several existing parties as well as Turn Services, LLC ("Turn Services"), another fleeter on the Lower Mississippi River and operator of the Bayou Fleet, where it is alleged that vessels under their care and custody became uncoupled from the fleet and caused damage at issue in this suit. R. Doc. 81 at 21. In September 2022, VRNO sought and obtained leave to file a third-party complaint against American River Transportation Company, LLC ("ARTCO"), another fleeting company with two fleets near Petitioners' fleet. R. Doc. 115 (alleging that vessels from ARTCO's fleets broke loose and damaged VRNO's property). Petitioners then sought and obtained leave to file a 14(c) tender and third-party demand against Vopak Industrial Infrastructure Americas St. Charles, LLC, ("Vopak") tendering Vopak to Entergy. R. Doc. 158. Shortly after, this matter was consolidated with a related case, *Parish of St. Charles v. American River Transportation Company, LLC*, Civil Action No. 2:22-cv-2220. R. Doc. 173. For ease and consistency, the Court will refer to all parties in this litigation that are not the Petitioners collectively as "Claimants."[3]

Claimants' individual positions vary, but overall, they allege that due to Petitioners' negligent operation of their fleeting facility and vessels, including either moving the vessels to a safer location or properly securing them, multiple allisions took place causing damage to Claimants' property, for example by causing damage to docks, facilities, and vessels, and/or by causing other breakaways in the area whose subsequently unmoored vessels then damaged

---

3. VRNO, MDI Interests, Entergy, CBC, Florida Marine, Enterprise, Kirby, LBT, Rocky Hickman, Turn Services, ARTCO, St. Charles Parish, and Vopak.

docks, facilities, and vessels. *See, e.g.*, R. Doc. 4 at 7-8 (alleging damage to VRNO docks from Petitioners' breakaway vessels); R. Doc. 6 at 11-12 (alleging damage to MDI Interests' Flotilla by Florida Marine vessels, allegedly broken loose by Petitioners' breakaway vessels); R. Doc. 183 at 2-3 (alleging damage to Turn Services' vessels by Petitioners' breakaway vessels).

## II. PRESENT MOTIONS

### a. All Pending Motions

As of September 18, 2023, there are fifteen (15) motions for summary judgment, or partial summary judgment, pending before this Court. Some address singular issues and some make multiple arguments. Six (6) of these pending motions move the Court to dismiss tenders and/or crossclaims made against various parties for damage to the Entergy and/or VRNO facilities upstream. R. Docs. 384, 394, 396, 401, 403, and 407. Three (3) address the personal injury claims made by Captain Rocky Hickman. R. Docs. 389, 398, and 402. Five (5) argue that the lack of a requisite duty under maritime negligence law requires either a dismissal of claims or a finding on damages. R. Docs. 390, 392, 394, 399, and 407. One (1) motion, by ARTCO, argues that ARTCO is entitled to an Act of God defense as to all claims asserted against it in this litigation. R. Doc. 397. Finally, two (2) motions address the applicability of the Act of God defense by Petitioners, including one motion by Petitioners seeking summary judgment on their exoneration of liability. R. Docs. 406 (by Petitioners) and 412 (by Movants).

### b. The Instant Motions

The instant motions are R. Doc. 406, titled "Magnolia Fleet, LLC and River Tug LLC's Motion for Summary Judgment as to Exoneration from Liability," and R. Doc. 412, titled "Claimants' Motion for Partial Summary Judgment Against Magnolia Fleet, LLC, and River

Tug, LLC."[4]

In Petitioners' motion, they urge the Court to grant summary judgment, finding that they are entitled to exoneration from liability because they undertook reasonable precautions in advance of Hurricane Ida, but nevertheless the Hurricane was an Act of God and no amount of human intervention or nautical skill would have prevented the ensuing damage. R. Doc. 406-1 at 2-5. Citing their compliance with permits, that they passed all U.S. Coast Guard inspections, and that they undertook appropriate preventative and surveillance measures to secure the fleet, Petitioners argue that they are entitled to exoneration. *Id.* at 2. Further, they allege that all claims in this litigation rely on the allegation that they acted unreasonably, and therefore a grant of summary judgment on this motion, R. Doc. 406, will effectively dispense with the litigation. *Id.* Movants filed a response in opposition in which they contest Petitioners' characterization of the weather conditions at Mile 122 Fleet, dispute Petitioners' understanding of the law surrounding ACOE permit noncompliance, and argue that any conduct undertaken by Petitioners' fleet captains is attributable to Petitioners under agency principles. R. Doc. 424.

In Movants' motion, they urge the Court to grant partial summary judgment on the question of Petitioners' entitlement to the Act of God defense and/or to limitation of liability. R. Doc. 412. Movants allege that Petitioners are not entitled to invoke the defenses of Act of God or limitation of liability because (1) Petitioners violated federal fleeting regulation 33 CFR § 165.803, and (2) Petitioners never attempted to build their Mile 122 fleet in compliance with their approved permit from the Army Corps of Engineers (ACOE). R. Doc. 412-1 at 31-37. Movants allege that while the Act of God defense may be asserted in response to various maritime law presumptions of fault that will attach to Petitioners, as a matter of law such defense

---

4. While the Movants of this motion title it as "Claimants", this Order & Reasons uses the term Claimants to include all non-petitioner parties in this action and therefore will refer to the signatories of this instant motion as Movants.

will fail because Petitioners improperly moored Tiers 2 and 3 and therefore fail the second prong of the Act of God analysis. *Id.* at 31-32. Movants further allege that Petitioners are not entitled to limit their liability as a matter of law because they had both privity and knowledge as to the statutory violations and permit noncompliance. *Id.* Petitioners filed a response in opposition arguing that Hurricane Ida was indisputably an Act of God, that they acted with reasonable care and nothing could have prevented the breakaways, that the Pennsylvania and Louisiana Rules do no apply to the facts of this case, and that the weather conditions prevented fact witnesses named in this matter from seeing anything that proves their liability. R. Doc. 430.

### III. APPLICABLE LAW

#### A. Summary Judgment

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Initially, the movant bears the burden of presenting the basis for the motion; that is, the absence of a genuine issue as to any material fact or facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

#### B. Federal Mooring Regulations

Fleet operators in the Lower Mississippi River are subject to federal regulations that

govern mooring requirements. 33 C.F.R. §165.803. The regulations define a fleet to include one or more tiers and define fleeting facilities as "the geographic area along or near a river bank at which a barge mooring service, either for hire or not for hire, is established." *Id.* at §165.805(a)(3)-(4). The regulations apply to the "waters of the Mississippi River between miles 88 and 240 above Head of Passes" although less strict mooring practices may be permitted from mile 127 to mile 240, as specified by certain provisions. *See, e.g.*, *id.* at §165.803(e)(1) (allowing barges secured to mooring devices between miles 127 and 240 to be secured at only the upstream end, as compared to miles 88 through 126 requiring both a downstream and upstream mooring); *id.* at §165.803(e)(2) (same, but applying to barges moored in tiers). Petitioners' fleeting facility is located at Mile 122 and is therefore subject to the more stringent mooring regulations.

When a fleeting facility moors barges, the regulations require that the barges be moored to a mooring device, defined to include "a deadman, anchor, pile, or other reliable holding apparatus." Id. at §165.803(a)(6). Between miles 88 and 126, "[a] barge may be moored to mooring devices if the upstream end of the barge is secured to at least one mooring device and the downstream end is secured to at least one other mooring device." *Id.* at §165.803(e)(1). When addressing barges moored in tiers along these miles of the Lower Mississippi, the regulations require that the "shoreward barge at the upstream end of the tier [be] secured to at least one mooring device, and the shoreward barge at the downstream end of the tier [be] secured to at least one other mooring device." *Id.* at §165.803(e)(2).

The regulations include a provision permitting departure from the regulations during times of emergency "to the extent necessary to avoid immediate danger to persons, property or the environment." *Id.* at §165.803(c).

### C. Maritime Law Presumptions & the Act of God Defense

"When a barge is delivered to the fleeter, a bailment relationship is established, and the fleeter as bailee has a duty to exercise reasonable care of the barge." *M/V Admiral Bulker v. United Bulk Terminals Davant*, 397 F. Supp. 3d 826, 836 (E.D. La. 2019) (Ashe, J.); *see also Dow Chemical Co. v. Barge UM-23B*, 424 F.2d 307, 311 (5 th Cir. 1970) (describing a wharfing as a "bailee for hire" who has a duty to ensure the barges in its custody are "adequately moored at all times"); *Conagra, Inc. v. Weber Marine, Inc.*, 2000 WL 943198, at *5 (E.D. La. July 7, 2000) ("A fleeter is responsible for the care of barges in its custody, and that includes a duty to ensure that the barges are adequately moored."). Should a barge break away from a fleet and cause damage, the fleeter is "faced with a legal presumption that the vessel was adrift through the custodian's negligence." *Conagra, Inc.*, 2000 WL 943198, at *5. The fleeter must then, by the preponderance of the evidence, disprove that they were negligent. *Id.*; *James v. River Parishes Co., Inc.*, 686 F.2d 1129, 1131 (5th Cir. 1982) ("[I]f a barge breaks away and then causes damage or injury, negligence by its custodian is presumed and the burden of disproof is on the custodian.").

A fleeter or adrift vessel may offer as a defense that "the collision was an unavoidable accident or vis major," but one asserting such a defense has the heavy "burden of proving the inevitable accident or Act of God." *James*, F.2d at 1131. "The vessel must show that the accident could not have been prevented by 'human skill and precaution and a proper display of nautical skills(.)'" *Id.* (quoting *Petition of United States*, 425 F.2d 991, 995 (5th Cir. 1970)).

Three additional maritime law presumptions apply in breakaway cases. The *Pennsylvania* Rule sets forth a causation presumption that "a vessel in violation of a statutory rule designed to prevent collisions bears the burden of showing 'not merely that her fault might not have been one of the causes, or that it probably was not, but that it *could not* have been.'" *In re Mid-South*

8

*Towing Co.*, 418 F.3d 526, 531 n.5 (5th Cir. 2005) (quoting *The Pennsylvania*, 86 U.S. 125, 136 (1873)) (emphasis added). Courts have expanded the *Pennsylvania* Rule's application from collisions to other maritime incidents. For example, a court in the Eastern District of Louisiana recently applied the *Pennsylvania* Rule to a violation of 33 C.F.R. § 165.803, the regulation governing fleeter mooring requirements. *Turn Services, LLC v. Gulf South Marine Transportation, Inc.*, 2023 WL 180028, at *8 (E.D. La. Jan. 13, 2023). The court in *Turn Services* explained that "for *The Pennsylvania Rule* to apply, a party must demonstrate three elements: '(1) proof by preponderance of evidence of violation of a statute or regulation that imposes a mandatory duty; (2) the statute or regulation must involve marine safety or navigation; (3) the injury suffered must be of a nature that the statute or regulation was intended to prevent.'" *Id.* (quoting *In re Marquette Transportation Co.*, LLC, 292 F. Supp. 3d 719, 729 (E.D. La. 2018) (Fallon, J.)). The court then found that those three elements were satisfied and applied the Rule. *Id.* at *8-9.

Courts strictly construe the *Pennsylvania* Rule's applicability to "violations of statutes *designed to prevent* the incident which occurred." *Conagra, Inc.*, 2000 WL 943198, at *6 (emphasis in original). In *Conagra*, the court addressed whether a fleet operator violated the Rivers and Harbors Act when it operated with a lapsed Corps permit. *Id.* Declining to answer that question, the court explained that the "*Pennsylvania* Rule would not apply to those violations in any event" because

> [a] Corps permit for a barge fleet, and the limitations in the permit, are meant to prevent obstruction of the river. The accident at issue was a barge breakaway. The requirement for a permit is not designed to prevent breakaways. Therefore, the *Pennsylvania* rule is inapplicable to the alleged statutory violations.

*Id.* (internal citations omitted). The court in *Conagra* then examined the same fleeter's alleged violation of 33 C.F.R. §165.803(e) when it secured "the second barge from the shore, not the

9

shoreward barge" to the mooring device. *Id.* The Court found that, given the nature of the breakaway and river conditions, "the violation of this regulation actually reduced the pressure on the tier, while compliance with the regulation would have increased the pressure" and therefore the court declined to apply the Pennsylvania rule. Although the court did not explicitly state it, implicit in its analysis is that a violation of 33 C.F.R. §165.803(e) falls under the *Pennsylvania* rule's ambit because that regulation is designed to prevent breakaways by mandating mooring arrangements that would reduce the likelihood of such breakaways. *See id.*

The *Oregon* Rule and the *Louisiana* Rule are maritime law presumptions that address vessel allisions. The *Oregon* Rule establishes a presumption of fault upon a moving vessel that allides with a properly moored vessel or other structure. *The Oregon*, 158 U.S. 186, 192 (1895); *In re Mid-South Towing Co.*, 418 F.3d at 531 n.5 (distinguishing the *Oregon* Rule from the *Pennsylvania* Rule because the *Oregon* Rule is a presumption of fault more "akin to the common law doctrine of *res ipsa loquitor*" while the *Pennsylvania* rule is a presumption of causation). Similarly, the *Louisiana* Rule "creates a rebuttable presumption that in collisions or allisions involving a drifting vessel, the drifting vessel is at fault." *Combo Maritime, Inc. v. U.S. United Bulk Terminal, LLC*, 615 F.3d 599, 602 (5 th Cir. 2010) (citing *James*, 686 F.2d at 1131-32); *The Louisiana*, 70 U.S. 164, 173 (1865). Courts treat these two presumptions "similarly, looking to law on one to inform decisions on the other." *Combo Maritime*, 615 F.3d at 605 (citing *Fischer v. S/Y NERAIDA*, 508 F.3d 586, 593 (11th Cir. 2007)).

To rebut the foregoing presumptions, a party "can demonstrate (1) that the allision was the fault of the stationary object; (2) that the moving vessel acted with reasonable care; or (3) that the allision was an unavoidable accident. . . . Each independent argument, if sustained, is sufficient to defeat liability." *Combo Maritime*, 615 F.3d at 605 (quoting *S/Y NERAIDA*, 508

F.3d at 493). A party invoking the Act of God defense does so pursuing that third argument, by showing "that the accident could not have been prevented by 'human skill and precaution and a proper display of nautical skills[.]'" *James*, 686 F.2d at 1132 (quoting *Petition of United States*, 425 F.2d at 995). Noting that the "common sense behind the rule makes the burden a heavy one," the Fifth Circuit has required vessels asserting the Act of God defense to "exhaust every reasonable possibility which the circumstances admit and show that in each they did all that reasonable care required." *Bunge Corp. v. M/V Furness Bridge*, 558 F.2d 790, 795 (5th Cir. 1977) (quoting *Brown & Root Marine Operators, Inc. v. Zapata Off-Shore Co.*, 377 F.2d 724, 726 (5th Cir. 1967)).

### D. Limitation

A vessel owner whose vessel is subject to potential liability for a maritime incident may limit their liability exposure to the "value of the vessel and pending freight" post incident. 46 U.S.C. §30523. "[T]his limitation is available only if the act or damage occurred 'without the privity or knowledge of such owner.'" *Wyandotte Transportation Co. v. United States*, 389 U.S. 191, 205 (1967) (quoting the statutory language). "Privity or knowledge does not necessarily require a showing of actual knowledge. It is deemed to exist if the shipowner has the means of obtaining knowledge, or if he would have obtained the knowledge by reasonable inspection." Brister v. A.W.I., Inc., 946 F.2d 350, 358 (5th Cir. 1991) (citing China Union Lines Ltd. V. A.O. Andersen & Co., 364 F.2d 769, 787 (5th Cir. 1986)). Whether privity or knowledge exist "must turn on the facts of the individual case." *Id.* (quoting *Gibboney v. Wright*, 517 F.2d 1054, 1057 (5th Cir. 1975)).

## IV. DISCUSSION

The issues surrounding the Petitioners' entitlement to limitation of liability and to the Act

of God defense, at their core, involve numerous questions of fact that make it improper for summary judgment adjudication. Underlying both Petitioners' motion for summary judgment, R. Doc. 406, and Movants' motion for partial summary judgment, R. Doc. 412, are questions of compliance with permits and statutory frameworks, questions about who knew which conditions when and how various individuals and entities reasonably or unreasonably responded to such conditions, and the adequacy of the protocols undertaken, to name a few. It is also notable that some of Petitioners' tiers did not break away while others did. These issues are pregnant with factual questions that the Court finds improper to resolve in summary judgment proceedings.

For the foregoing reasons, the Court **DENIES** both Petitioners' Motion for Summary Judgment, R. Doc. 406, and Movants' Motion for Summary Judgment, R. Doc. 412.

New Orleans, Louisiana, this 18th day of September, 2023.

                                                **UNITED STATES DISTRICT JUDGE**