# UNITED STATES DISTRICT COURT EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN THE MATTER OF THE COMPLAINT OF MAGNOLIA FLEET, LLC AND RIVER TUG LLC AS OWNER AND OPERATOR OF THE M/V LOUISIANA FOR EXONERATION FROM AND/OR LIMITATION OF LIABILITY OPERATOR OF THE M/V LOUISIANA** | **CIVIL ACTION NO: 2:22-cv-00504**<br><br>**DISTRICT JUDGE:**<br>**HON. ELDON E. FALLON**<br><br>**MAGISTRATE JUDGE:**<br>**HON. DONNA PHILLIPS CURRAULT**<br><br>**Admiralty – Rule 9(h)** |

## ORDER AND REASONS

The Court has before it LeBeouf Brothers Towing, LLC's (LBT) Motion for Partial Summary Judgment Against Rocky Hickman as to Foreseeability (R. Doc. 389), LBT's Motion for Partial Summary Judgment on Hickman's Claims for Jones Act Negligence and Unseaworthiness (R. Doc. 398), and Magnolia Fleet, LLC and River Tug LLC's (Petitioners) Motion for Summary Judgment Dismissing the Claim of Rocky Hickman (R. Doc. 402). Having considered the briefing and the applicable law, the Court rules as follows.

### I. BACKGROUND

This suit arises out of alleged property damage caused by unmoored vessels during Hurricane Ida on or around August 29, 2021. R. Doc. 1 at 3. Petitioners are a fleeting facility located at or around the Mile 122 marker on the Lower Mississippi River (the "Mile 122 Fleet") and are the owner and operator of the M/V LOUISIANA, the fleet boat for the Mile 122 Fleet. *Id.* at 2-3. Petitioners filed for Exoneration From or Limitation of Liability on February 25, 2022, alleging that neither they nor the M/V LOUISIANA are liable for any damages or injuries resulting from the uncouplings that occurred at their fleet as well as others along the River in the

1

aftermath of Hurricane Ida. *Id.* at 3-4. Alternatively, Petitioners argue that in the event they are found to be liable for any of the claims asserted against them, they are entitled to limit their liability pursuant to 46 U.S.C. §§ 30501-30512, the Limitation of Liability Act, and/or that Hurricane Ida constituted an Act of God. *Id.* at 4-5.

On July 18, 2022, Captain Rocky Hickman, employed by LBT as Captain of the M/V NANCY SONIER, filed an answer to Petitioners' complaint and asserted a third-party complaint against LBT. R. Doc. 69. The SONIER was a tug attached to Tier 2 and broke away with the tier. Following the breakaway, Hickman allegedly attempted to guide the tier away from other tiers and vessels, but the conditions grew so severe that the SONIER was forced to evacuate with all of the crew members, except Hickman (who allegedly left ship by jumping into the Mississippi River), seeking shelter within a barge. *See* R. Doc. 444 at 4-11. Hickman is the sole personal injury claimant in this limitation action, alleging that, as a result of the storm and ensuing breakaway events, he "sustained severe injuries to his mental state and has since been diagnosed with post-traumatic stress syndrome, depression, and anxiety." R. Doc. 69 at 7. LBT filed its answer to Hickman's third-party complaint on August 10, 2022, asserting a number of defenses including that any injuries Hickman sustained were the result of his own negligence or fault, that his injuries were caused by an Act of God, and that LBT denies liability under the Jones Act whether it be for unseaworthiness, negligence, or otherwise. R. Doc. 79 at 3-5. LBT later sought and obtained leave to file a Late Claim and Answer to Petitioners' Complaint and on October 31, 2022, LBT's claim against Petitioners was filed into the record. R. Doc. 156.

Petitioners answered this claim on November 23, 2022 along with a counterclaim against LBT, alleging that Hickman, as an employee of LBT and as captain of the SONIER, caused the tug "and its crew to uncouple and break out barges from tier 2" and that Hickman not only

2

"failed to control barges and assist in retrieving barges" but that he also abandoned the SONIER, contributing to the breakaways and ensuing damage. R. Doc. 189 at 14-15.

In responding to this counterclaim, LBT tendered Hickman to Petitioners, asserting that should Petitioners be able to recover from LBT, "then LBT is entitled to the benefits of and/or to recover from Rocky Hickman by way of tort indemnity, contribution, and/or otherwise, any and all sums awarded to Petitioners." R. Doc. 310 at 8.

## II. PRESENT MOTIONS

### a. LBT's Two Motions

LBT filed two motions for partial summary judgment relating to Hickman's personal injury claims: a Motion for Partial Summary Judgment Against Rocky Hickman as to Foreseeability ("Foreseeability Motion"), R. Doc. 389, and a Motion for Partial Summary Judgment on Hickman's Claims for Jones Act Negligence and Unseaworthiness ("Jones Act Motion"), R. Doc. 398.

In the Foreseeability Motion, LBT argues that it is entitled to partial summary judgment "dismissing Hickman's claims for mental health injuries for anything that occurred after he decided to disregard his training and jump into the Mississippi River during a major hurricane." R. Doc. 389-1 at 2. Arguing that Hickman's injuries are largely if not entirely the result of actions he took in contravention of LBT's instructions, training, and expectations, LBT argues that it could not foresee the harm he claims and therefore LBT is not liable. *See id.*

In the Jones Act Motion, LBT argues that it cannot be liable for Hickman's alleged mental injuries because LBT "did not cause or contribute to the breakaway in any way, nor did it breach any duty to exercise reasonable care to provide a safe place to work." R. Doc. 398. LBT presents numerous reasons why its selection of the Mile 122 Fleet was reasonable. *See id.* at 10-

13 (listing LBT's eight primary reasons for selecting Mile 122 Fleet and describing other companies' decisions to select Mile 122 Fleet). In response to Hickman's failure to train allegation, LBT alleges that this claim is refutable by evidence in the record. *Id.* at 14 ("Additionally, while Hickman claims he was not trained what to do, pilot Aaron Pierre testified that Hickman told the crew precisely what to do and where to go. Why Hickman did not follow his own guidance and instruction remains a mystery."). Finally, LBT argues there is no evidence of the SONIER's unseaworthiness and should any have become known to Hickman, it was his duty to correct such conditions. *Id.* at 15.

Hickman filed opposition responses to both motions. Opposition as to Foreseeability, R. Doc. 422 (also opposing Petitioners' motion, which raises foreseeability arguments); Opposition as to Jones Act Negligence and Unseaworthiness, R. Doc. 423. On foreseeability, Hickman argues that this issue has too many factual questions to be addressed in summary judgment. He puts forth that neither LBT nor Petitioners deny that they owed Hickman a duty up until some point, but that this piecemeal approach to when a duty was or was not owed raises too many factual questions. R. Doc. 422 at 5. Further, he believes summary judgment is inappropriate because medical and damages discovery has not yet begun in this matter, so LBT's and Petitioners' theories on the cause(s) of his injuries (that they stem from actions he himself took and the ensuing repercussions) are premature and leave many factual questions unanswered. *Id.* at 6.

As for the Jones Act claims, Hickman argues that the other companies who selected Mile 122 Fleet were "equally reckless" and that LBT's purported reasons for selecting the location boil down to one reason, "weather-related considerations." R. Doc. 423 at 13-14. He posits that by the evening of August 26, 2021 it was clear Mile 122 Fleet would be squarely within "the

worst quadrant of the storm," thus LBT knew or should have known that the location was not a safe place to ride out the storm. *Id.* at 14-15, 17. Hickman theorizes that LBT refused his and others' requests to moor elsewhere so that it could continue its offloading operations in the New Orleans area and that too many questions of fact exist as to the reasonableness of LBT's decisions to warrant summary judgment at this time. *Id.* at 17-18 ("LBT, in the interest of making money, hampered the ability of the M/V NANCY SONIER to escape the area and the storm by making the vessel offload at that time."). Hickman also reasserts his claim that LBT failed to adequately train him and other employees how to handle emergencies. *Id.* at 24 ("LBT crews were not trained where to go when the vessels you have the option of abandoning ship to are breaking out and getting blown out into the river to collide and possibly sink, with the crews aboard them.").

### b. Petitioners' Motion

Petitioners filed a motion for summary judgment urging the Court to dismiss the claim of Rocky Hickman in this limitation action, arguing that purely emotional injuries are not cognizable in the Fifth Circuit, that Petitioners owed no special duty to Hickman, and that his injuries are not foreseeable. R. Doc. 402. Petitioners cite several Fifth Circuit cases[1] that reject a plaintiff's claim for purely emotional injuries, including one in which the plaintiff had "transitory, non-recurring physical phenomena, harmless in themselves, such as dizziness, vomiting, and the like," to show that Hickman's claimed injuries of post-traumatic stress syndrome, anxiety, and depression do not constitute cognizable injuries in this Circuit absent an

---

1 . *SCF Waxler Marine, L.L.C. v. M/V Aris T*, 24 F.4th 458, 476-77 (5th Cir. 2022) (declining to adopt or preclude the zone-of-danger tort theory for purely emotional injuries to general maritime law and noting that, even under that test, a court can "consider the experience seamen are likely to have" when evaluating foreseeability); *Plaisance v. Texaco, Inc.*, 966 F.2d 166, 169 (5th Cir. 1992) (*en banc*) (explaining that the Fifth Circuit does not permit a seaman to recover for purely emotional injuries in a Jones Act suit); *Wunstell v. BP, PLC*, 2023 WL 3275833 (E.D. La. May 5, 2023) (Milazzo, J.) ("Under general maritime law, a plaintiff can only recover for emotional injury if there is 'some physical contact.'") (quoting *Plaisance*, 966 F.2d at 168).

accompanying physical injury. R. Doc. 402-1 at 12-14 (quoting *In re Deepwater Horizon*, 841 F. App'x 675, 678 (5th Cir. 2021)). In rebutting Hickman's claims of general maritime negligence, Petitioners argue that they owed Hickman no special duty, as they were neither his employer nor his bailee, and that his injuries were not reasonably foreseeable. *Id.* at 14-18.

Hickman filed responses in opposition to Petitioners motion, addressing their foreseeability argument in his Opposition as to Foreseeability, R. Doc. 422, discussed above, and arguing against Petitioners' other claims in R. Doc. 445. Hickman presents case law to rebut Petitioners on their cognizable injury argument, showing several examples of plaintiffs with similar injuries that were considered cognizable and/or permitted to proceed past summary judgment and/or to ultimately recover. *See* R. Doc. 445 at 20-25.[2] On a duty owed, Hickman alleges that Petitioners do in fact owe him a bailment duty, or at least a limited bailment duty, and that this presents a "significant question of material fact" precluding summary judgment. *Id.* at 26-31.

### III.  APPLICABLE LAW

#### A.  Summary Judgment

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Initially, the movant bears the burden of presenting the basis for the motion; that is, the absence of a genuine issue as to any material fact or facts.

---

2. Citing *Petition of United States*, 418 F.2d 264, 269 (1st Cir. 1969) (holding that nervous disorders that result from sea catastrophes are "compensable conditions"); *Gough v. Natural Gas Pipeline Co. of America*, 996 F.2d 763, 765 (5th Cir. 1993) (finding the physical impact test satisfied for a plaintiff who jumped overboard to escape a ship fire and claimed emotional distress injuries); *Pullman v. Bouchard Transportation Co., Inc.*, 2000 WL 1818503, at *3-4 (E.D. La. Dec. 12, 2000) (Vance, J.) (denying summary judgment because the ship's "buckling, bowing, and cracking of the ceiling" and plaintiff's "fears that the roof would cave in create a question of material fact concerning whether [plaintiff] faced a threat of imminent physical impact" (internal quotations omitted)).

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

### B. Jones Act Negligence & Seaworthiness

Courts treat Jones Act claims for negligence and seaworthiness as "two separate and distinct claims." *Chisholm v. Sabine Towing & Transportation Co., Inc.*, 679 F.2d 60, 62 (5 th Cir. 1982). In a negligence action under the Jones Act, like under a FELA claim, the defendant "must bear responsibility if his negligence played any part, even the slightest, in producing the injury," also referred to as the "producing cause." *Id.* (citing *Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500, 506 (1957)); *In re Cooper/T. Smith*, 929 F.2d 1073, 1076-77 (5th Cir. 1991). Seaworthiness claims demand a proximate cause. *Chisholm*, 679 F.2d at 62; *Clark v. Kellogg Brown & Root L.L.C.*, 414 F. App'x 623, 626 (5th Cir. 2011). In one case, the Fifth Circuit described that the plaintiff is held to a "featherweight" burden of proving causation, whether it be proximate or producing cause. *Chisholm*, 679 F.2d at 62 ("In either case the plaintiff's burden has been characterized as very light, even 'featherweight.'"); *see also In re Cooper/T. Smith*, 929 F.2d at 1076 ("The burden to prove causation in a Jones Act case is 'very light' or 'featherweight.'"); *Clark*, 414 F. App'x at 626 ("Thus, the two concepts come into play here – the type of causation that must be shown (producing) and the plaintiff's burden to show that cause (featherweight)."); *Vallot v. Central Gulf Lines, Inc.*, 641 F.2d 347, 350 (5th Cir. 1981) ("The burden of proving proximate cause in actions based on general maritime law and the Jones

7

Act is very light and on the plaintiff.").

## IV. DISCUSSION

Even considering the featherweight burden that Hickman must carry in these claims, the issues that underpin the instant motions are fraught with factual questions that go to the reasonableness of LBT's selection of Mile 122, the sufficiency of Petitioners' mooring protocols and actions in the leadup to Hurricane Ida, the reasonableness of Captain Hickman's various decisions leading up to and following the breakaways, and more. For example, to adjudicate LBT's motion on Jones Act negligence and unseaworthiness and Hickman's opposition thereto, the trier of fact will need to determine which facts were known to which LBT decisionmakers and when they were known, how they understood the storm and fleet conditions at the time of their decisions, which factors contributed to such decisions, and whether their conduct throughout was reasonable given the circumstances, to name only a few of the fact issues. Many of these questions may require credibility determinations by the finder of fact. Similarly, foreseeability implicates questions of material fact relating to Hickman's actions, the conditions he faced, and the reasonableness of his response to those conditions.

For the foregoing reasons, the Court **DENIES** LBT's Motions for Partial Summary Judgment as to Foreseeability and as to Jones Act Negligence and Unseaworthiness, R. Docs. 389 and 398, and Petitioners' Motion for Summary Judgment Dismissing Hickman's Claim, R. Doc. 402.

New Orleans, Louisiana, this 18th day of    September   , 2023.

_____
**UNITED STATES DISTRICT JUDGE**